## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **RICHARD A. DUNSMORE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **21-CV-00128-RP** |
| | § | |
| **MARSHA McLANE, K. JOLLEY,** | § | |
| **and LATITIA MURFF,** | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION

TO:  THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges.

Before the Court is Plaintiff Richard A. Dunsmore's 42 U.S.C. § 1983 amended complaint. Dunsmore is proceeding pro se and in forma pauperis. In his amended complaint, Dunsmore names as defendants Marsha McLane, Director of the Texas Civil Commitment Office (TCCO), and K. Jolley and Latitia Murff, employees at the Texas Civil Commitment Center (TCCC). (ECF No.7.) Upon review, the Court concludes Dunsmore's amended complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I. Statement of the Case

Dunsmore is civilly committed as a Sexually Violent Predator (SVP) at the TCCC in Littlefield, Texas. On February 5, 2021, Dunsmore filed his original complaint. (ECF No. 1.) The Court issued a Show Cause Order, directing Dunsmore to file an amended complaint correcting

the complaint's legal deficiencies. (ECF No. 4.) On April 12, 2021, Dunsmore filed an amended complaint, claiming (1) TCCO's correspondence policy violates his constitutional rights by restricting his right to correspond and access the courts; (2) McLane and TCCC staff retaliated against him in violation of his First Amendment rights after he wrote letters to TCCO clinical evaluators; and (3) Defendants have conspired to violate his constitutional rights. He seeks punitive damages, as well as declaratory and injunctive relief.

## II. Applicable Law

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a case if the Court determines that the action is (i) frivolous or malicious, (ii) fails to state claim on which relief may be granted, or (iii) seeks monetary relief against a defendant who is immune from such relief. Such a dismissal may occur "'before service of process or before the filing of the answer' as long as certain safeguards are met." *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990)).

An action is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges a violation of a legal interest which clearly does not exist.'" *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)). A complaint is factually frivolous when "the facts alleged are 'fantastic or delusional scenarios' or the legal theory upon which a complaint relies is 'indisputably meritless.'" *Eason v. Thaler*, 14 F.3d 8, 9 n.5 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327-28).

In evaluating whether a complaint states a claim under § 1915(e)(2)(B), this Court applies the same standards governing dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6). *See*

FED. R. CIV. P. 12(b)(6); *DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* FED. R. CIV. P. 8(a)(2) (a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *See Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, a plaintiff's factual allegations must establish more than just the "sheer possibility" a defendant has acted unlawfully. *Id.*; *Twombly*, 550 U.S. at 555 (factual allegations must be enough to raise a right to relief above the speculative level). Determining a complaint's plausibility is a "context-specific task," but if the factual allegations "do not permit the court to infer more than the mere possibility of misconduct" the complaint has failed to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 679.

The Court construes a pro se plaintiff's allegations liberally, holding the plaintiff to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, a plaintiff's pro se status does not offer him an "impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

## III. Analysis

*1. First Amendment: Correspondence*

Dunsmore alleges McLane violated his First Amendment rights to freedom of correspondence and association by authorizing TCCO's correspondence policy, which he alleges is unconstitutionally restrictive. Dunsmore further alleges that TCCO has interfered with his correspondence with Felicia Richardson, with whom he is in an "intimate" relationship, and who was helping Dunsmore file litigation challenging his civil commitment and living conditions.

Dunsmore attached eighty-six pages of exhibits to his amended complaint, which includes a copy of TCCO's Policy and Procedure 3.4, Approval of Contacts and Chaperones (Policy 3.4).[1] (ECF No. 7-1 at 1-6.) Among other things, the policy requires that a SVP submit a request for contact, after which the TCCO Case Manager and Treatment Provider determine whether or not to approve the contact. Contacts are approved if they "will be a pro-social to the client's ability to meet treatment and supervision requirements and expectations." (*Id.* at 1.) Policy 3.4 further states that the basis for denying contact includes the SVP's "Treatment team determine[ing] the contact is no longer appropriate;" the contact is a registered sex offender, inmate, or is on community, parole or Federal supervision; the contact no longer wants to have contact with the SVP; and "[the contact] possess traits or attitudes that are not consistent with pro-social supports or has a criminal history that would be disruptive or contrary to the client's success in the program." (*Id.* at 2.)

Dunsmore attached a communication form he sent to his TCCO case manager, Mandi Castillo, on April 20, 2020, wherein he requests that Felicia Richardson's phone numbers and address be put back on his approved calling and mailing lists. Ms. Castillo responds that Dunsmore

---

[1] In considering dismissal for failure to state a claim, the Court is limited to reviewing "the facts stated in the complaint and the documents either attached or incorporated in the complaint . . ." *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017-18 (5th Cir. 1996).

needs to submit a "Collateral Contact Request" and that, if Ms. Richardson answers and is approved, Dunsmore would be notified. (ECF No. 7-1 at 25.) Dunsmore does not state whether he complied with Ms. Castillo's directions. Finally, Dunsmore attached two letters he received from Ms. Terri LeClercq regarding his legal writing in September 2020 and March 2021 (*id.* at 27, 31-32), as well as an August 2020 letter he received from an attorney at the State Counsel for Offenders (*id.* at 76).

"Civilly committed persons retain First Amendment rights, but, . . . restrictions on these rights 'are permissible so long as they advance the state's interest in security, order, and rehabilitation.'" *Welsh v. Correct Care Recovery Solutions*, No. 19-10825, 2021 WL 487152 (5th Cir. 2021) (quoting *Bohannan v. Doe,* 527 F. App'x 283, 294-95 (5th Cir. 2013)); *see also Ahlers v. Rabinowitz,* 684 F.3d 53, 64 (2d Cir. 2012)). Reasonable restrictions on mail to and from civilly committed SVPs have withstood First Amendment scrutiny. *See Ahlers,* 684 F.3d at 64-65; *Rivera v. Rogers,* 224 F. App'x 148, 151 (3d Cir. 2007). As a result, to state a claim for a violation of his First Amendment rights, Dunsmore must allege facts showing that TCCO's restrictions on his ability to correspond with Felicia Richardson—and others—were made pursuant to a policy not reasonably related to a legitimate objective of Dunsmore's commitment. *Bohannan,* 527 F. App'x at 294-95 (citing *Rivera,* 224 F. App'x at 151).

Dunsmore alleges McLane, through her authorization of Policy 3.4, has unconstitutionally restricted his right to correspond with Felicia Richardson, with whom he claims he is in an "intimate" relationship. However, Dunsmore fails to allege material facts showing that the restrictions imposed by Policy 3.4 are not reasonably related to "Texas's twin goals of 'long-term supervision and treatment of sexually violent predators.'" *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018) (quoting TEX. HEALTH & SAFETY CODE ann. § 841.001). Policy 3.4 permits SVPs

to correspond with others, so long as those contacts are approved by TCCO and determined to be "pro-social" in character. (ECF No. 7-1 at 1.) Further, when Dunsmore requested that Richardson be added to his approved contacts list, his request was not denied; rather, his case manager told him to submit a collateral contact request as required by Policy 3.4. (*Id.* at 25.) Dunsmore does not state whether he submitted the collateral contact request, nor does he state whether any such request was approved or denied.

Dunsmore also attached three letters he received from legal advocates responding to Dunsmore's correspondence, which tend to show he is not restricted from corresponding with others. Accordingly, Dunsmore has failed to show that the restrictions imposed by Policy 3.4 are not reasonably related to his supervision and treatment. This claim should be dismissed for failure to state a claim upon which relief can be granted.

### 2. *First Amendment: Access to Courts*

Related to the correspondence claim, Dunsmore also claims Policy 3.4 violates his right to access the courts. More specifically, he appears to allege that, in authorizing Policy 3.4, McLane denied him contact with Felicia Richardson—who was assisting Dunsmore with his litigation— thus infringing on his right to access the courts.

This allegation implicates a right generally protected by the First Amendment. *See* U.S. CONST. amend. I. Prisoners have a constitutionally protected right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821 (1977). Although civil committees are not prisoners, the Court applies the same legal standard for both SVPs and prisoners' access-to-court claims. *See, e.g., Day v. Seiler*, 560 F. App'x 316, 319 (5th Cir. 2014). In *Lewis v. Casey*, the Supreme Court explained that the right to access the courts requires the plaintiff show an "actual injury," which is more than the inability to file a claim; rather, it requires showing that, but for the defendant's acts or omission,

the plaintiff would have been able to file a nonfrivolous legal claim. 518 U.S. 343, 349-53 (1996); *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002). A plaintiff who fails to show an actual injury lacks standing to pursue a First Amendment access-to-courts claim. *Lewis*, 518 U.S. at 349.

Dunsmore alleges no facts concerning any particular lawsuit where he was unable to file a claim or otherwise participate in the filing of a claim, nor does he allege facts that any such litigation involved nonfrivolous legal claims. The Court directed Dunsmore to correct this deficiency in its Show Cause Order, but Dunsmore has failed to do so. As such, Dunsmore fails to allege the "actual injury" required for an access-to-courts claim, and thus this claim should be dismissed for failure to state a claim.

*3. First Amendment: Retaliation*

In both his original and amended complaint, Dunsmore states that the "basis for this litigation" involves an incident report and sanctions he received after sending letters to TCCO clinical examiners.

"'To state a valid claim for retaliation under [S]ection 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" *Brown*, 911 F.3d at 245 (quoting *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008)). Again, although Dunsmore is not a prisoner, the same legal standard applies to his claim. *See id.* (using this standard for a retaliation claim brough by a SVP.) "Under the First Amendment, a prison official may not harass or retaliate against an inmate 'for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct.'" *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019) (quoting *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995)). The adverse action must be more than *de minimis*; it must rise to a level "capable of deterring a person of ordinary firmness from further

7

exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). To show causation, a plaintiff must allege that "but for the retaliatory motive the complained of incident… would not have occurred." *Woods*, 60 F.3d at 1166. A plaintiff must either "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.*

The documents Dunsmore attached to his amended complaint show that, on May 7, 2020, he submitted a client communication form to his case manager, Ms. Castillo, requesting the identity of the psychologist who would perform his biennial review or, in the alternative, the names and addresses of all TCCO's contracted clinical examiners. Ms. Castillo responded that she did not have the name of his examiner and that he should submit an open records request to TCCO-Austin for a list of all of TCCO's clinical examiners. (ECF No. 7-1 at 54.) On June 2, 2020, the TCCO's general counsel granted Dunsmore's request for "the names and business addresses for all clinical examiners TCCO plans on using for biennial review exams and reports." (*Id.* at 53.) Dunsmore attached a copy of a September 18, 2020 letter addressed to "TCCO's– CONTRACTED CLINICAL EVALUATORS" wherein, among other things, he criticizes the methods used by the clinical examiners for the biennial reviews. (*Id.* at 37-45.) On November 6, 2020, Dunsmore received an incident report, stating he had been "sending harassing correspondence to biennial examiners without receiving approval" and that some of the letters contained harassing language and one contained threatening language. The report states Dunsmore received a "verbal warning for these infractions. Graduated sanctions will be imposed for future infractions." It then reminded Dunsmore about rules established in Policy 3.4. (*Id.* at 47.)

These allegations fail to state a claim for retaliation. First, Dunsmore's allegations do not show that he was exercising a constitutional right: Dunsmore has not alleged facts suggesting that

Policy 3.4 is not reasonably related to legitimate rehabilitative objectives and thus it does not violate the First Amendment to have his correspondence restricted by this policy. Further, even if Dunsmore had been exercising a constitutional right, the retaliatory adverse act he describes—a verbal reprimand—is *de minimis* and fails to support a claim for retaliation. *See Morris*, 449 F.3d at 685-86 (retaliation claim must allege adverse acts that would chill or silence a person of ordinary firmness from future First Amendment activities); *Walker v. Savers*, 658 F. App'x 720, 727 (5th Cir. 2016) (reprimand for violating prison rule was probably *de minimis*); *see also Gibson v. Jean-Baptiste*, 802 F. App'x 858, 859-60 (5th Cir. 2020) (Fifth Circuit has consistently rejected threat-based retaliation claims; collecting cases). Accordingly, this claim should be dismissed for failure to state a claim.

    *4.   Remaining claims*

Dunsmore names K. Jolley and Latitia Murff as "potential defendants" in his amended complaint. The only claim the Court can discern against these individuals from Dunsmore's complaint and attachments is that they denied Dunsmore's Step 1 and Step 2 grievances requesting that the above incident report be removed from his record. (ECF No. 7-1 at 51-52.) However, prisoners—and, by extension, civil committees—do not have a protected liberty interest in having their grievances addressed and resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (prisoner did not have liberty interest in having grievances resolved to his satisfaction). Accordingly, his allegations against K. Jolley and Latitia Murff fail to state a claim upon which relief can be granted.

Finally, Dunsmore cites 42 U.S.C. § 1985 (Conspiracy to interfere with civil rights) in his amended complaint. Dunsmore fails to make any factual allegations supporting a conspiracy claim and the Court cannot glean any factual support in his complaint for such a claim. Accordingly, to

the extent Dunsmore is claiming that defendants conspired to violate his constitutional rights, that claim should be denied for failure to state a claim. *See Iqbal*, 556 U.S. at 679 (if the factual allegations "do not permit the court to infer more than the mere possibility of misconduct" the complaint has failed to state a claim upon which relief can be granted).

### III. Recommendation

The undersigned recommends that the District Court **DISMISS WITH PREJUDICE** Plaintiff's claims against Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B).

### IV. Objections

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

SIGNED this 12th day of May, 2021.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE